IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01345-BNB

JAMES K. CONKLETON,

Plaintiff,

v.

RICK RAEMISCH, Executive Director of the Colorado Department of Corrections (CDOC), in his official capacity,
BRANDON SHAFFER, Chairman, Colorado Board of Parole, in his official capacity,
ALFREDO PENA, Member, Colorado Board of Parole, in his official capacity,
DENISE BALAZIC, Member, Colorado Board of Parole, in her official capacity,
BART COX, Treatment Provider for the CDOC Sex Offender Treatment and Management Program (SOTMP), in his official capacity,
MICHAEL FLOYD, Contract Polygrapher of Amich & Jenks, Inc., in his official capacity,
ANN NEWMAN, Treatment Provider for the CDOC SOTMP, in her official capacity,
SAMUEL DUNLAP, Treatment Provider for the CDOC SOTMP, in his official capacity,
LEONARD WOODSON, Treatment Provider for the CDOC SOTMP, in his official capacity,
JEFF JENKS, Contract Polygrapher/Sex Offender Management Board (SOMB) member, in his official capacity,
COLTON McNUTT, Treatment Provider for the CDOC SOTMP, in his official capacity, and
SOTMP TREATMENT TEAM, in its official capacity,

Defendants.

---

ORDER OF DISMISSAL

---

Plaintiff, James K. Conkleton, is a prisoner in the custody of the Colorado Department of Corrections (CDOC). Mr. Conkleton has filed *pro se* a Prisoner Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 claiming his rights under the United States Constitution have been violated. He seeks declaratory and prospective injunctive relief.

Mr. Conkleton has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 in this action. Pursuant to § 1915(e)(2)(B)(i), the Court must dismiss the action if the claims Mr. Conkleton is asserting are frivolous. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989). For the reasons stated below, the Court will dismiss the action in part as legally frivolous and in part as barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994).

The Court must construe the Prisoner Complaint liberally because Mr. Conkleton is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If the Prisoner Complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, the Court should not be an advocate for a *pro se* litigant. *See id.*

Mr. Conkleton is a convicted sex offender serving an indeterminate sentence of ten years to life in prison under Colorado's Lifetime Supervision Act (LSA). He contends that he is required to participate in sex offender treatment as part of his prison sentence. The following allegations regarding sex offender treatment within the CDOC are helpful in understanding Mr. Conkleton's constitutional claims.

5. In the CDOC, sex offender treatment is administered by the Sex Offender Treatment and Monitoring Program, (SOTMP), which is governed by Administrative Regulation, (AR), 700-19.

> 6. Under the LSA, sex offenders must meet specific treatment goals or criteria as defined in AR 700-19, in order to be deemed eligible for a recommendation for parole release from the CDOC's SOTMP. Specifically, under Colo. Rev. Stat. § 18-1.3-1006, at each parole hearing, the CDOC, through it's [sic] SOTMP is required to make recommendations to the Board of Parole regarding whether the perspective [sic] parole applicant should be released on parole.
>
> 7. The criteria for parole release, established by the [Sex Offender Management Board (SOMB)], consist of seven distinct elements. The CDOC has defined those elements in AR 700-19. One of those elements requires that an offender achieve a non-deceptive finding on any polygraph examinations.
>
> 8. Upon information and belief, as well as personal observation, Plaintiff asserts that no sex offenders in the CDOC's Arrowhead Correctional Center, ("ACC"), has [sic] been granted release without having met each and every one of the seven criteria set out in AR 700-19.
>
> 9. Successful completion of the sex offender treatment criteria leads to the receipt of the SOTMP's positive recommendation for parole release, which consists of a Memo, often called a "Criteria Letter" reflecting that the perspective [sic] parolee has met, or is meeting SOMB/SOTMP criteria. In the absence of not meeting any one or more of the criteria, the Criteria Letter will reflect that the perspective [sic] parolee is not meeting SOMB/SOTMP criteria.

(ECF No. 1 at 7.)

Mr. Conkleton first claims that his constitutional right to due process has been violated. He alleges in support of the due process claim that he failed a non-random polygraph examination in October 2013, as well as a follow-up examination in March 2014, which led to his being "subjected to punitive restriction from associating with some offenders, limited in some of his treatment activities, and subject to extra labor without pay . . . in addition to not meeting the parole release criteria of having a non-deceptive polygraph" at his parole release review in April 2014. (ECF No. 1 at 9, ¶19.) Mr. Conkleton further alleges in support of the due process claim that "[t]he Defendants

did not give Plaintiff notice, or the ability to rebut the polygraphs [sic] findings. No pre or post deprivation proceedings were provided to Plaintiff. Plaintiff was not allowed to marshal any facts, call any witnesses, or see any evidence the Defendants weighed their findings of guilt upon." (ECF No. 1 at 9-10, ¶20.)

The United States Constitution guarantees due process when a person is to be deprived of life, liberty, or property. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Mr. Conkleton does not allege that he was deprived of life or property. Therefore, the due process claim depends upon the existence of a constitutionally protected liberty interest.

The existence of a constitutionally protected liberty interest depends upon the nature of the interest asserted. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). A prisoner is not entitled to any procedural protections in the absence of a grievous loss. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Generally, a liberty interest protected by due process may arise under the United States Constitution or state law. *See Sandin*, 515 U.S. at 483-84. However, state prisoners are not entitled to any particular degree of liberty and the Due Process Clause does not protect every change in the conditions of confinement that has a substantial adverse impact on the prisoner. *See Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Templeman*, 16 F.3d at 369. The Constitution also does not create a protected liberty interest in a prisoner's release prior to the expiration of a valid sentence. *See Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011) (per curiam); *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Therefore, the due process claim lacks merit unless Mr. Conkleton has been deprived of a constitutionally protected liberty interest that arises under

Colorado state law.

State law may create a liberty interest if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Relevant factors to be considered in determining whether certain conditions of confinement impose atypical and significant hardship in relation to the ordinary incidents of prison life include whether the conditions relate to and further a legitimate penological interest, whether the conditions are extreme, whether the conditions increase the duration of confinement, and whether the conditions are indeterminate. *See DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Mr. Conkleton's allegations that he was "subjected to punitive restriction from associating with some offenders, limited in some of his treatment activities, and subject to extra labor without pay" (ECF No. 1 at 9, ¶19) as a result of the failed polygraph examinations are not the sort of extreme conditions that arguably might give rise to a constitutionally protected liberty interest. *See Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin*, 515 U.S. at 479-83, for the proposition "that nondisciplinary administrative segregation 'is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.'"). Mr. Conkleton's allegation that he did not meet "the parole release criteria of having a non-deceptive polygraph" at his parole release review in April 2014 (ECF No. 1 at 9, ¶19) also does not demonstrate the existence of a constitutionally protected liberty interest under Colorado state law. *See Shirley v. Davis*, 521 F. App'x 647, 650 (10th Cir. 2013) (stating sex offenders in

Colorado do not have a constitutionally protected liberty interest in parole "because Colorado's parole scheme for sexual offenders is discretionary").

For these reasons, the Court finds that Mr. Conkleton fails to demonstrate he was deprived of a constitutionally protected liberty interest in connection with the failed polygraph examinations. As a result, the due process claim is legally frivolous and must be dismissed.

Mr. Conkleton alleges in his second claim that Defendants have retaliated against him for filing administrative grievances. The retaliatory acts specified in claim two include denials of parole in May 2013, October 2013, and April 2014; being subjected to punitive sanctions after failing his polygraph examination in October 2013; being denied enrollment in a pre-release course in February 2014; and being scheduled for a non-random polygraph examination just prior to his parole hearing. According to Mr. Conkleton, "[t]he Defendants [sic] acts, actions, of subjecting Plaintiff to the retaliatory effects of extended incarceration through the oppressive application of the polygraph, was deliberately designed to chill his exercise of his constitutional rights." (ECF No. 1 at 21, ¶81.)

Prison officials may not retaliate against an inmate for exercising his constitutional rights. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). To state a retaliation claim Mr. Conkleton must demonstrate that: (1) he was engaged in constitutionally protected activity, (2) Defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendant's adverse action was substantially motivated as a response to Plaintiff's constitutionally protected activity. *See Allen v. Avance*, 491 F. App'x 1, 6 (10th

Cir. 2012). Under the third prong, Mr. Conkleton must demonstrate that the "alleged retaliatory motives were the 'but for' cause of the defendants' actions." *Peterson*, 149 F.3d at 1144. "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1991).

Mr. Conkleton's retaliation claim is barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994). Pursuant to *Heck*, if a judgment for damages necessarily would imply the invalidity of a criminal conviction or sentence, the action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. *See Heck*, 512 U.S. at 486-87. Although Mr. Conkleton is not challenging the validity of a criminal conviction or sentence, the rule in *Heck* also applies to claims that challenge other forms of confinement. *See Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (per curiam) (stating that *Heck* applies to proceedings related to parole and probation). In short, a civil rights action filed by a state prisoner "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Mr. Conkleton's retaliation claim implicates the rule in *Heck* because the retaliatory acts he alleges in connection with claim two implicate the denials of parole in

May 2013, October 2013, and April 2014. Therefore, Mr. Conkleton cannot succeed on the retaliation claim unless he demonstrates that, but for the alleged retaliatory motive, he would not have been denied parole in May 2013, October 2013, and April 2014. Because Mr. Conkleton fails to demonstrate he has invalidated the denials of parole, the retaliation claim is barred by the rule in *Heck*.

Mr. Conkleton's third claim is an equal protection claim. A person's right to equal protection is violated when the government or its officials treat him or her differently than others who are similarly situated. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).

Mr. Conkleton alleges in support of the equal protection claim that he was denied release on parole in April 2014 even though unidentified sex offenders at other CDOC facilities have been released on parole despite not meeting SOMB/SOTMP criteria. Because the equal protection claim implicates the denial of parole in April 2014, the equal protection claim also is barred by the rule in *Heck*.

For these reasons, the instant action will be dismissed. Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Plaintiff files a notice of appeal he also must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24. Accordingly, it is

ORDERED that the Prisoner Complaint and the action are dismissed. It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

DATED at Denver, Colorado, this 3rd day of June, 2014.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court